<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WALTER WOLF,<br><br>    Plaintiff,<br><br>    v.<br><br>KAREN WOLF, *et al.*,<br><br>    Defendants. | Case No. 2:20-cv-14576 (BRM) (JSA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

  Before this Court are: (1) a Motion to Dismiss filed by defendant Karen Wolf ("Ms. Wolf") seeking to dismiss Plaintiff Walter Wolf's ("Mr. Wolf") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 26), and (2) a Motion for Judgment on the Pleadings filed by defendants Michael Mazzeo ("Mazzeo"), Ryan Sokera ("Sokera"), Robert Hoffman ("Hoffman"), and the Borough of Emerson ("Emerson") (collectively, "Borough Defendants," and together with Ms. Wolf, "Defendants") (ECF No. 27). Mr. Wolf opposed the motions. (ECF Nos. 28, 29.) Defendants replied. (ECF Nos. 30, 31.) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' motions are **GRANTED**.

**I. BACKGROUND**

  Emerson is a municipality in Bergen County, New Jersey. (ECF No. 1 ¶ 11.) Ms. Wolf was a member of the town council for Emerson and was seeking reelection in September 2018. (*Id*. ¶ 16.) During that time, Ms. Wolf and Mr. Wolf were in the process of divorcing. (*Id*. ¶ 27.) During

this time, Mr. Wolf posted flyers adverse to Ms. Wolf in multiple locations in Emerson, portraying Ms. Wolf as being unfaithful to her marriage and containing other derogatory statements about her. (*Id.* ¶ 17; ECF No. 27-1 at 3.) Mr. Wolf also sent the flyers to individuals in Emerson and posted negative information about Ms. Wolf on social media.[1] (ECF No. 1 ¶ 20; ECF No. 26-1 at 7.) Mr. Wolf claims what he did constitutes an exercise of his First Amendment rights of speech and association aimed to prevent Ms. Wolf's reelection. (ECF No. 1 ¶¶ 19–20.)

On September 19, 2018, Hoffman, who was Emerson's town administrator, became aware of the flyers posted by Mr. Wolf and contacted Emerson's police department to conduct an investigation. (*Id.* ¶ 21.) Mazzeo, who was Emerson's chief of police, ordered an investigation into the flyers. (*Id.* ¶ 23.) Sokera, a detective at Emerson's police department, conducted the investigation. (*Id.* ¶¶ 9, 24.) During the investigation, Ms. Wolf met with Sokera, gave him screenshots from Mr. Wolf's Facebook page, and indicated her belief that Mr. Wolf posted the flyers. (*Id.* ¶ 26.)

On October 19, 2018, an arrest warrant for Mr. Wolf was prepared based on Sokera's affidavit (*id.* ¶¶ 33–34), and an assistant prosecutor from the Bergen County Prosecutor's Office approved charges against Mr. Wolf for harassment under N.J. Stat. Ann. § 2C:33-4(a) and cyber harassment under N.J. Stat. Ann. § 2C:33-4.1(a)(2). (ECF No. 26-1 at 7; ECF No. 26-5 at 33.) On October 20, 2018, Mr. Wolf was arrested and imprisoned for two days. (ECF No. 1 ¶ 34; ECF No. 26-1 at 7.) On October 22, 2018, Mr. Wolf was released from jail on the condition he wore an electronic monitoring bracelet, which was later removed on the condition that Mr. Wolf forfeithis gun collection to the authorities. (ECF No. 1 ¶ 36.)

---

[1] Hereinafter, Mr. Wolf's activities of disseminating derogative information of KW in flyers, letters and social media postings are referred to as the "Dissemination Activities."

On November 7, 2018, the Superior Court of New Jersey, Bergen County, Chancery Division, Family Part entered a consent and restraining order (the "Divorce Consent Order") in a divorce proceeding between Ms. Wolf and Mr. Wolf (the "Divorce Proceeding"). (ECF No. 26-2.) The Divorce Consent Order restrained the parties "from creating, forwarding, posting or commenting on/to any information about the other party on social media" and "any similar type activity that is outside of social media including physical printouts/handouts, flyers, newspaper, commentary, etc." (*Id*. ¶ 6.) By the terms of the Divorce Consent Order, Ms. Wolf and Mr. Wolf acknowledged their voluntary agreement to be bound by its conditions and recognized each had the opportunity to obtain the advice of counsel. (*Id*. ¶¶ 9–10.) In addition, the Divorce Consent Order included a provision obligating Ms. Wolf to inform the Bergen County Prosecutor's Office that she would not press charges against Mr. Wolf for his alleged cyber-stalking. (*Id*. ¶ 7.)

Mr. Wolf alleges, on November 12, 2018, the River Edge municipal court found in a hearing entertaining Plaintiff's harassment and cyberstalking charges that Plaintiff's Dissemination Activities were protected by the First Amendment and dismissed the charges against Mr. Wolf (the "Municipal Proceeding"). (ECF No. 1 ¶ 37.)

From August 2020 to October 2020, the Superior Court of New Jersey, Bergen County, Chancery Division, Family Part held a four-day proceeding regarding Mr. Wolf's qualification to possess firearms (the "Forfeiture Proceeding"), in which the State of New Jersey and Mr. Wolf were opposing parties. (ECF Nos. 26-4, 26-5, 26-6, 26-7.) In the Forfeiture Proceeding, Ms. Wolf testified for the State of New Jersey regarding the Dissemination Activities. (ECF No 26-1 at 9; ECF No. 26-4 at 9, 13–14.) Judge Janeczko, who presided over the proceeding, found the Dissemination Activities amounted to "harassment" and "a smear campaign" and rejected the argument of Mr. Wolf's legal counsel that the Dissemination Activities constituted an exercise of

Mr. Wolf's constitutional rights. (ECF No. 26-1 at 10, 13; ECF No. 26-4 at 37–38; ECF No. 26-7 at 12.) Judge Janeczko further found Mr. Wolf "pose[d] a danger to the general public" and "giving weapons back to [Mr. Wolf] would in fact be an invitation to tragedy." (ECF No. 26-7 at 19.) Judge Janeczko ordered forfeiture of Mr. Wolf's firearms (the "Forfeiture Order"). (*Id*.)

Mr. Wolf appealed the Forfeiture Order and, on October 6, 2021, the Appellate Division of New Jersey affirmed. (ECF No. 36-1.) The Appellate Division noted Judge Janeczko concluded Mr. Wolf lacked the "sound judgment" to possess the firearms based on six reasons:

> (1) the posting of disparaging flyers throughout the municipality on two separate dates; (2) sending letters accusing Ms. Wolf of infidelity just before her re-election effort; (3) arguing with his son on the front lawn of the home, causing a patrolling police officer to investigate; (4) ripping a bathroom door off the hinges; (5) tossing an iPad over his shoulder and striking Ms. Wolf on the nose; and (6) self-reporting an incident of driving while intoxicated.

(*Id.* at 9.) The Appellate Division stated it was "satisfied the State met its burden of proving by a preponderance of the evidence that the forfeiture of Mr. Wolf's firearms and [Firearms Purchaser Identification Card] was warranted." (*Id.* at 12.)

On October 16, 2020, Mr. Wolf filed a Complaint in this Court alleging Defendants "retaliate[ed] against [him] for engaging in speech and association which was protected under the First Amendment" and asserting claims under: (1) 42 U.S.C. § 1983 against Borough Defendants and Ms. Wolf for their alleged retaliation against Mr. Wolf for his exercise of First Amendment rights (Count I); (2) 42 U.S.C. § 1983 against Emerson for its alleged policies and customs that caused deprivation of Mr. Wolf's First Amendment rights (Count 2); (3) New Jersey Civil Rights Act ("NJCRA") against all Defendants for their alleged retaliation against Mr. Wolf for his exercise of New Jersey Constitutional rights (Count 3); (4) 42 U.S.C. § 1983 against all Defendants for malicious prosecution in violation of Mr. Wolf's Fourth, Fifth and Fourteenth Amendment

rights (Count 4); (5) 42 U.S.C. § 1983 against all Defendants for abuse of process in violation of Mr. Wolf's Fourth, Fifth and Fourteenth Amendment rights (Count 5); [2] (6) 42 U.S.C. § 1983 against all Defendants for false arrest in violation of Mr. Wolf's Fourth, Fifth and Fourteenth Amendment rights (Count 6); (7) 42 U.S.C. § 1983 against all Defendants for false imprisonment in violation of Mr. Wolf's Fourth, Fifth and Fourteenth Amendment rights (Count 7); and (8) 42 U.S.C. § 1985 against all Defendants for conspiracy to violate civil rights in violation of Mr. Wolf's Fourth, Fifth and Fourteenth Amendment rights (Count 8). (ECF No. 1.) On May 18, 2021, Ms. Wolf filed a Motion to Dismiss (ECF No. 26), and the Borough Defendants filed a Motion for Judgment on the Pleadings (ECF No. 27). Mr. Wolf opposed Defendants' motions. (ECF Nos. 28, 29.) Defendants replied. (ECF Nos. 30, 31.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988). In resolving a motion made pursuant to

---

[2] Mr. Wolf asserts Count V as a combined claim for malicious use of process (also known as malicious prosecution) and abuse of process under § 1983. Because Mr. Wolf already asserts a malicious prosecution claim under § 1983 in Count IV, the same cannot be duplicatively alleged in Count V. Therefore, the Court construes Count V solely as an abuse of process claim under § 1983. *See Burgess v. Bennet*, Civ. A. No. 20-7103, 2021 U.S. Dist. LEXIS 52042, at *21 n.10 (D.N.J. Mar. 19, 2021) ("Malicious use of process and malicious prosecution are, in essence the same tort and distinct from malicious abuse of process." (citations omitted)); *see also Gebhart v. Steffen*, 574 F. App'x 156, 159–60 (3d Cir. 2014) ("Abuse of process and malicious use of process, also known as malicious prosecution, are separate torts." (citing *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989))).

Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See Rosenau*, 539 F.3d at 221.

A motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to "raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007); *See also Szczurek v. Prof'l Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, 2014 WL 4418059 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim.") (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Gebhart v. Steffen*, 574 F. App'x 156, 157 (3d Cir. 2014)).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235–36 (3d ed. 2004)).

For the purposes of the motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to

[the plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-unlawfully-harmed-me accusation" must be pled; it must include "further factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power*

*& Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted).

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, including items that are *integral to or explicitly relied upon* in the complaint." *Coulter v. Doerr*, 486 F. App'x 227, 228 (3d Cir. 2012) (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

### III. DECISION

#### A. Mr. Wolf's Claims Against Ms. Wolf (Counts 1, 3–8)

Mr. Wolf includes Ms. Wolf in all of his claims, pleading Ms. Wolf violated Mr. Wolf's civil rights. (ECF No. 1.) Mr. Wolf's allegation that Ms. Wolf misused the state legal process alone cannot hold Ms. Wolf, a private party, liable under federal civil rights laws. *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 172 (3d Cir. 2004) ("[P]rivate misuse of a state statute does not describe conduct that can be attributed to the State."); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 950, 951 (1982) (holding private actors may be liable under § 1983 when the action is fairly attributable to the State). Therefore, Ms. Wolf's motion to dismiss Mr. Wolf's claims against her is **GRANTED,** and these claims against Ms. Wolf are **DISMISSED**.

#### B. Mr. Wolf's Claims Against Borough Defendants

##### 1. First Amendment Retaliation Claims (Counts 1, 2, 3)

To plead constitutional retaliation claims, the claimant must prove "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282

(3d Cir. 2004) (citations omitted). Here, Mr. Wolf asserts no constitutionally protected activities other than the Dissemination Activities. Judge Janeczko already found in the Forfeiture Proceeding that the Dissemination Activities were not constitutionally protected. The parties dispute whether this Court should adopt Judge Janeczko's finding, which would bar Mr. Wolf's § 1983 retaliation claims. Resolution of this dispute, therefore, turns on the question of collateral estoppel, and New Jersey preclusion rules apply. *See Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999). New Jersey courts apply a five-pronged test to determine whether collateral estoppel should bar relitigation of an issue.

> (1) the issue must be identical; (2) the issue must have actually been litigated in a prior proceeding; (3) the prior court must have issued a final judgment on the merits; (4) the determination of the issue must have been essential to the prior judgment; and (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding.

*Del. River Port Auth. v. FOP, Penn-Jersey Lodge 30*, 290 F.3d 567, 573 (3d Cir. 2002) (citing *In re Estate of Dawson*, 641 A.2d 1026, 1034–35 (N.J. 1994)).

Regarding the first prong, Judge Janeczko found the Dissemination Activities did not qualify as an exercise of Mr. Wolf's constitutional rights. *See* Part III.B.2.a, *supra*. In other words, the identical issue was decided in the Forfeiture Proceeding.

As to the second prong, Mr. Wolf argued in the Forfeiture Proceeding his actions constituted an exercise of his constitutional rights, and the argument was rejected by Judge Janeczko. *See* Part III.B.2.a, *supra*. Therefore, the identical issue was actually litigated in the Forfeiture Proceeding.

The third prong is met because Judge Janeczko's finding that Mr. Wolf's Dissemination Activities were not protected by the First Amendment is a final judgment on the merits for purposes of collateral estoppel. "[F]or purposes of issue preclusion . . . 'final judgment' includes any prior

adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997) (quoting Restatement (Second) of Judgments § 13 (1982)). "In determining whether the resolution was sufficiently firm, the second court should consider whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991). "The ability to appeal is only one factor to be considered and is not outcome determinative for the purposes of collateral estoppel." *In re LoGiudice*, Civ. A. No. 13-2612, 2013 U.S. Dist. LEXIS 175184, at *15 (D.N.J. Dec. 12, 2013) (citations omitted).

During the four-day hearing before Judge Janeczko, Mr. Wolf, through his counsel, twice argued the Dissemination Activities were constitutionally protected. (ECF No. 26-4 at 36; ECF No. 26-7 at 12.) Also, Mr. Wolf, Ms. Wolf, and several police officers testified as to the Dissemination Activities, and Judge Janeczko conducted a thorough analysis of their testimonies and credibility. (*See* ECF No. 26-7 at 8–18.) In particular, the State called Ms. Wolf, Sokera, and Hoffman as witnesses who considered the Dissemination Activities "a concern." (*Id*. at 9–12.) After having heard and analyzed these proofs, Judge Janeczko "found the testimony of the police officers and [Ms. Wolf] to be credible" and "the testimony of [Mr. Wolf] not to be credible." (*Id*. at 18.) Moreover, Judge Janeczko admitted into evidence: (1) police reports and photos that depicted the Dissemination Activities, and (2) the actual flyers and envelopes used in the Dissemination Activities.[3] After considering this evidence (ECF No. 26-5 at 21), Judge Janeczko determined the Dissemination Activities "[went] beyond exercising constitutional rights" and amounted to "a smear campaign." (ECF No. 26-7 at 12.)

---

[3] These documents and physical objects were referred to as Exhibits S-1, S-6, S-8, S-9, S-10, and S-12 in the Forfeiture Proceeding. (ECF No. 26-5 at 2.)

Therefore, the Court finds the parties were fully heard on the First Amendment inquiry into the Dissemination Activities, on which Judge Janeczko reached a reasoned determination. In addition, "other factors weigh more heavily in favor of finality." *LoGiudice*, 2013 U.S. Dist. LEXIS 175184, at *17–18 (upholding the collateral estoppel effect of a prior state court determination because: (1) "[t]he parties were represented by counsel and an extensive discovery was conducted;" (2) "the parties had the opportunity to testify and present evidence at a trial before the [s]tate [c]ourt;" (3) "the [s]tate [c]ourt heard testimony from the relevant witnesses and made credibility determinations accordingly;" and (4) "[a]t the end of the trial, the [s]tate [c]ourt issued a clear and reasoned [l]etter [o]pinion which represented that court's judgment on the issues").

The fourth prong is satisfied because Judge Janeczko's determination that Mr. Wolf's Dissemination Activities were not protected by the First Amendment was essential for the Judge to issue a forfeiture order. *See Copeland v. United States DOJ*, Civ. A. No. 15-7431, 2015 U.S. Dist. LEXIS 170004, at *8 (D.N.J. Dec. 21, 2015) (describing the fourth prong as requiring the issue in question to be essential to the final judgment referred to in the third prong (citing *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007))).

The fifth prong is met because the party against whom collateral estoppel is asserted is Mr. Wolf, who was a party in the Forfeiture Proceeding.

As a result, the five-pronged test for collateral estoppel is satisfied. In addition, New Jersey appellate division's decision affirming Judge Janeczko's findings (ECF No. 36-1) further compels the Court to apply collateral estoppel. *See Gregory Mktg. Corp. v. Wakefern Food Corp.*, 504 A.2d 828, 837 (N.J. Super. Ct. Law. Div. 1985) (recognizing collateral estoppel applies even pending an appeal); *see also Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp.*, 688 F.2d 166, 174 (3d Cir. 1982) (recognizing collateral estoppel applies even when the party was unable to invoke that

legal theory in the previous proceeding).

The Court next turns to the question of fairness. *See Mann v. Estate of Meyers*, 61 F. Supp. 3d 508, 522 (D.N.J. 2014); *see also In re Liquidation of Integrity Ins. Co.*, 67 A.3d 587, 596 (N.J. 2013). The trial court has "broad discretion to determine when [collateral estoppel] should be applied." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 651 (1979). The Court finds that, in the Forfeiture Proceeding, both Mr. Wolf and his legal counsel voiced their positions on the Dissemination Activities and confronted the witnesses, evidence, and arguments offered by the State of New Jersey. Therefore, Mr. Wolf had a full and fair opportunity to litigate the constitutionality issue of the Dissemination Activities in the Forfeiture Proceeding. *See Parklane Hosiery*, 439 U.S. at 332, 333 (finding the non-moving party to have had a full and fair opportunity to litigate where, in the previous proceeding, he had "every incentive to litigate . . . fully and vigorously" and had enjoyed all the "procedural opportunities" that would be available to him in the second proceeding).

Because the five-pronged test is met and fairness favors applying collateral estoppel, the Court finds Judge Janeczko's determination on the constitutionality of the Dissemination Activities has preclusive effect. This issue cannot be relitigated here.[4] Accordingly, the

---

[4] The Court is not persuaded by other preclusion theories. Judicial estoppel "bar[s] a party to a legal proceeding from arguing a position inconsistent with one previously asserted." *State v. Gonzalez*, 667 A.2d 684, 691 (N.J. 1995) (citations omitted). Mr. Wolf is not asserting a position inconsistent with the Divorce Order by arguing the Dissemination Activities were protected by the First Amendment, which was entered after the Dissemination Activities started to occur. Even if the Divorce Order prohibits Mr. Wolf from conducting similar activities in the future, it does not hold the Dissemination Activities could not be an exercise of Mr. Wolf's First Amendment rights. *See Palcsesz v. Midland Mut. Life Ins. Co.*, 87 F. Supp. 2d 409, 412 (D.N.J. 2000) (explaining test for judicial estoppel). As for *Rooker-Feldman* doctrine, Mr. Wolf's alleged injuries, including the charges brought against him and the two-day imprisonment, occurred before the completion of the Divorce Proceeding. Nothing in the Divorce Order can be interpreted as facilitative of such injuries. On the contrary, in the Divorce Order, Mr. Wolf agreed not to press charges against Mr. Wolf. As for the Forfeiture Proceeding, it occurred after issuance of the Divorce Order and

Defendants' Motion for Judgment on the Pleadings as to Counts 1 and 2 is **GRANTED**, and Counts 1 and 2 are **DISMISSED**.

The dismissal of Counts 1 and 2 affects the viability of Mr. Wolf's NJCRA claim (Count 3), as well. "The NJCRA was modeled after § 1983, and courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983[,] thereby construing the NJCRA in terms similar to its federal counterpart." *Wronko v. Howell Twp.*, Civ. A. No. 17-1956, 2018 U.S. Dist. LEXIS 10577, at *15–16 (D.N.J. Jan. 23, 2018) (citations omitted). New Jersey courts "ha[ve] repeatedly interpreted the NJCRA analogously to § 1983." *Id*. (citations omitted). Therefore, "to the extent that certain theories of [p]laintiff's § 1983 claims were dismissed, [p]laintiff's NJCRA claim was also dismissed on those grounds, and to the extent that the [c]ourt determined that [p]laintiff stated a claim as to other § 1983 theories, [p]laintiff also stated a claim under the NJCRA." *Rapeika v. Borough of Fort Lee*, Civ. A. No. 19-6612, 2020 U.S. Dist. LEXIS 203539, at *4 n.3 (D.N.J. Oct. 30, 2020). In other words, "all claims under NJCRA are treated the same as the comparable § 1983 claims." *Jackson v. Hamilton Twp.*, Civ. A. No. 10-3989, 2014 U.S. Dist. LEXIS 39310, at *17 (D.N.J. Mar. 24, 2014). Mr. Wolf's NJCRA claim is based on Defendants' alleged retaliation. Therefore, Defendants' Motion for Judgment on the Pleadings as to Count 2 is **GRANTED**, and Count 2 is **DISMISSED**.

---

therefore could not have caused Mr. Wolf's alleged injuries. That is, Mr. Wolf's alleged injuries were not caused by the two proceedings. Instead, the alleged injuries were caused by Defendants' actions. In other words, plaintiff's injury is not caused by state-court judgments, and the *Rooker-Feldman* doctrine is inapplicable here. *See Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (two of the requirements for Rooker-Feldman doctrine to apply is the state-court judgments caused the injury and those judgments were rendered before the federal suit was filed). Finally, the Court declines adopt the alleged findings in the Municipal Proceeding because differences in burden of proof. *Standlee v. Rhay*, 557 F.2d 1303, 1305 (9th Cir. 1977) ("The difference in the burdens of proof in criminal and civil proceedings usually precludes application of collateral estoppel.").

### 2. Fourth, Fifth, and Fourteenth Amendment Claims (Counts 4–8)

For the remaining counts, two independent grounds warrant dismissal.

### a. Qualified Immunity

The Borough Defendants contend Counts 4 through 8 should be dismissed on qualified immunity grounds. (ECF No. 27-1 at 10.) The Borough Defendants argue they should not be held liable for the discretionary and reasonable actions of law enforcement in light of Mr. Wolf's erratic and harassing conduct. (*Id*. at 11–12.) The Borough Defendants insist probable cause existed for the arrest of Mr. Wolf, based in part on Judge Janeczko's finding in the Forfeiture Proceeding that Mr. Wolf was harassing Ms. Wolf with the Dissemination Activities and that such activities are not constitutionally protected. (*Id*. at 12.) The Borough Defendants further contend Mr. Wolf fails to articulate what actions of Defendants have caused him a constitutionally cognizable injury. (*Id*. at 25.) Mr. Wolf counters the Forfeiture Proceeding is unrelated to this case and is not dispositive of his claims. (ECF No. 28 at 5.) Mr. Wolf further argues Judge Janeczko did not specifically find probable cause for his arrest. (*Id*.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt*, 565 U.S. at 546 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "[L]aw enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [courts] have

indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson*, 483 U.S. at 641 (citing *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986)). "[Q]ualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson*, 483 U.S. at 646 n.6 (citations omitted).

Here, Mr. Wolf was prosecuted and arrested for alleged harassment and cyber harassment. A person commits harassment "if, with purpose to harass another, he . . . [m]akes . . . a communication . . . in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J. Stat. Ann. § 2C:33-4(a). Specifically:

> A person commits the crime of cyber-harassment if, while making a communication in an online capacity via any electronic device or through a social networking site and with the purpose to harass another, the person . . . knowingly sends . . . any lewd, indecent, or obscene material to or about a person with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person.

N.J. Stat. Ann. § 2C:33-4.1(a)(2).

During the Forfeiture Proceeding, Mr. Wolf denied the harassing nature of the Dissemination Activities. On the first day of the proceeding, Mr. Wolf, through his counsel, argued the Dissemination Activities were "not for the purpose of harassment" and Mr. Wolf did not harass Ms. Wolf. (ECF No. 26-4 at 37–38.) Mr. Wolf's legal counsel explained Mr. Wolf was making truthful statements about Ms. Wolf during her election campaign, such that the Dissemination Activities were political in nature and constituted an exercise of Mr. Wolf's First Amendment rights. (*Id*. at 35–36.) Judge Janeczko rejected Mr. Wolf's legal counsel's arguments and stated the Dissemination Activities were conducted with "a purpose to harass" and constituted harassment. (*Id*. at 37–38.) Thereafter, multiple witnesses discussed the factual details of the

Dissemination Activities before Judge Janeczko, Mr. Wolf, and his legal counsel. *See* Part III.B.1, *supra*. At the end of the Forfeiture Proceeding, Judge Janeczko described the Dissemination Activities as "go[ing] beyond exercising constitutional rights" and "a smear campaign." (ECF No. 26-7 at 12.) Judge Janeczko also cited with approval Hoffman's testimony that the Dissemination Activities were "disgusting," "out of the ordinary," and "beyond reasonableness." (ECF No. 26-7 at 12.) These records show Borough Defendants were reasonable to believe Mr. Wolf had a harassing purpose and an intent to emotionally harm a reasonable person, and the Dissemination Activities were likely to cause annoyance or alarm on Ms. Wolf's part. This in turn shows the Borough Defendants acted reasonably in prosecuting and arresting Mr. Wolf for harassment and cyber harassment.

Therefore, the Borough Defendants are entitled to qualified immunity, which bars Mr. Wolf's § 1983 claims against them for malicious prosecution, false arrest, and false imprisonment. *See Ianuale v. Borough of Keyport*, Civ. A. No. 16-9147, 2018 U.S. Dist. LEXIS 177515, at *20, 27 (D.N.J. Oct. 16, 2018) (dismissing the plaintiffs' § 1983 claim for malicious prosecution, false arrest, and false imprisonment against the defendant police officers due to qualified immunity).

### b. Insufficient Pleading

The Court finds Mr. Wolf's pleading insufficient. "Defendant knew" (ECF No. 1 ¶¶ 57, 64); "policies, practices and/or customs of The Borough of Emerson" (*id*. ¶¶ 73, 79 84); "without probable cause" (*id*. ¶¶ 70, 76); and "conspired" (*id*. ¶ 81) are all classic examples of conclusory pleadings, and they cannot survive a motion to dismiss. *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (holding that to satisfy the pleading standard, the plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was"); *In re Advanta*, 180 F.3d at 538 (affirming district court's conclusion that plaintiffs "may not rest on a bare inference that a

defendant 'must have had' knowledge of the facts"); *Gary v. Workers Comp. Appeals Bd.*, No. 19-2589, at *3 (3d Cir. Oct. 16, 2019) (affirming district court conclusion that barebone allegation of defendants "conspired" will not survive a motion to dismiss); *Boseman v. Upper Providence Twp.*, No. 16-1338, at *13 (3d Cir. Feb. 27, 2017) (affirming district court conclusion that conclusory allegation of "without probable cause" will not survive a motion to dismiss).

Nevertheless, the dismissal is without prejudice. *See Mallela v. Cogent Infotech Corp.*, Civ. A. No. 19-1658, 2020 U.S. Dist. LEXIS 87668, at *8 (W.D. Pa. May 19, 2020) ("The [c]ourt will dismiss the [plaintiff's] claims without prejudice because there are not enough facts alleged to plausibly support any of these claims."); *Riconda v. US Foods, Inc.*, Civ. A, No. 19-1111, 2019 U.S. Dist. LEXIS 153311, at *9 (D.N.J. Sept. 6, 2019) (dismissing the plaintiff's claim without prejudice, because "this [wa]s the first time that the sufficiency of the [plaintiff's] allegations [for the claim] ha[d] been tested").

### IV. CONCLUSION

For the reasons set forth above, Ms. Wolf's Motion to Dismiss and Borough Defendants' Motion for Judgment on the Pleadings are **GRANTED**. Mr. Wolf's Complaint is **DISMISSED WITHOUT PREJUDICE.** Mr. Wolf has 30 days to file an Amended Complaint, and failure to do so will turn dismissals without prejudice into dismissals with prejudice. An appropriate order follows.

Date: November 29, 2021            */s/ Brian R. Martinotti*
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**